brought before the building was completed, to restrain the erection of the wall, and to compel the removal of the foundations laid. In this case the plaintiff waited until the building was completed, and then brought this suit to compel the builder or his grantee to take the wall down. In that case the alleyway was 35½ inches wide, just wide enough to enable the plaintiff, who was an importer and wholesale dealer in wine, to take his casks through; and the strip taken from that by the defendant was 9 inches wide, which wholly prevented the plaintiff from using the alley. Pages 226, 228, 127 N. Y., and pages 804, 805, 27 N. E. The injury in that case was substantial, and, but for the injunction, would have been irreparable. The case of Wheelock v. Noonan, 108 N. Y. 179, 15 N. E. 67, also relied upon by the plaintiff's counsel, and in which a mandatory injunction was granted, is clearly distinguishable from this in material respects. In that case the defendant did not plead that the plaintiff had a remedy at law, although the decision was not placed on that ground. It appeared there that the defendant had wrongfully covered the plaintiff's lot with a great quantity of large stones or boulders. The defendant had a parol license to occupy the land, which was subsequently revoked; but he refused to remove the stones, and the plaintiff had no adequate remedy, except a mandatory injunction. He could not bring ejectment, because the defendant had left, or was not in possession. He could not remove the stones, having nowhere to put them, and the court questioned his right to interfere with them; and, if he had a right of action for trespass, he could get only the rental value of the land, and be, in the mean time, deprived of the use of it, or opportunity to improve it. The one inch in this case the plaintiff could not improve by building on it, and whatever damage it is to plaintiff can be recovered by action or actions at law. To justify the granting of an injunction, the injury must not only be irreparable, (Troy & B. R. Co. v. Boston, H. T. & U. Ry. Co., 86 N. Y. 108, 126; Akrill v. Selden, 1 Barb. 316; Thomas v. Protective Union, 121 N. Y. 45, 52, 24 N. E. 24,) but the court must not thereby do irreparable injury to the other party; or, at least, the court, in the exercise of its discretion, should not grant an injunction where it would create a greater wrong than it is intended to remedy, (Gallatin v. Bank, 16 How. Pr. 253.) It seems to us that to grant a mandatory injunction in this case, compelling the defendant to take down the wall of a five-story brick building, because it encroached one inch over the line, when the line encroached upon is an open alley, would be causing great injury to the defendant, without any corresponding advantage or benefit to the plaintiff; and, as the plaintiff has other remedies or means of obtaining full compensation for all the injury she has sustained or may sustain, the court ought not, in the exercise of its discretion, to compel the taking down of the wall, and partial destruction of the building, by a mandatory injunction. It would, we think, be a violation of the rules and equitable principles by which courts of equity have always been governed. The plaintiff might properly have claimed alternative relief by asking for an injunction, unless the defendant would pay the value of the land encroached upon, and such damage as the taking or appropriation has caused her, and offering to release to the defendant the strip so covered by defendant's wall, on payment of such value and damages. In that case full and ample compensation could have been given her in this action, and she may yet so amend her complaint; but, if she does not elect to do so within 10 days, the complaint should be dismissed."

---

## BRATER v. ANDREWS.

(Supreme Court, General Term, First Department. December 15, 1893.)

APPEAL—REVIEW OF INTERLOCUTORY JUDGMENT.
    An appeal from a final judgment does not bring up an interlocutory judgment for review.

Appeal from special term, New York county.

Action by Mary P. Brater against Addison F. Andrews, testamentary trustee, etc. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and FOLLETT, JJ.

George M. Bayne, for appellant.

Francis A. Winslow, (Anderson Price, of counsel,) for respondent.

PER CURIAM. The notice of appeal was from the final judgment, no appeal having been taken from the interlocutory judgment. The questions sought to be raised, therefore, are not before us for review, and the judgment must be affirmed, with costs.

---

(73 Hun, 416.)

### · CARVER v. BARKER et ux.

(Supreme Court, General Term, Fourth Department. December 8, 1893.)

1. FRAUDULENT CONVEYANCES—EVIDENCE—RECORDING DEED.
   The fact that a voluntary deed to the grantor's wife was promptly recorded is not conclusive that the grantor did not intend to defraud his subsequent creditors, but may be considered in determining the intent.
2. SAME—ADMISSIONS OF GRANTOR.
   In an action against a grantor and grantee to set aside a deed as in fraud of creditors, it is not error to admit statements made by the grantor, and evidence of his circumstances, where the court expressly limits the effect thereof to the grantor.

Appeal from special term, Broome county.

Action by Elden R. Carver, as receiver, against David F. Barker and Ida B. Barker. From a judgment in favor of plaintiff, defendants appeal.

The opinion of Mr. Justice PARKER at special term is as follows:

The conveyance of the property on De Russey street, by Barker to his wife, left him utterly insolvent. He was then owing his father some $1,400 or $1,900, and aside from a lot of store accounts that are not collected, and are evidently but of little value, and aside from the real estate, he had barely $500 to pay it with. Being in this condition, he had evidently formed the idea that, so far as subsequent creditors were concerned, he could put his property in his wife's name, and thus remove it beyond their reach. His statements to several of the witnesses show that such was his idea. He thereupon conveyed to her all his real estate, practically without any consideration whatever, and, moreover, without any apparent reason or motive other than a mere change of the title from himself to her. The theory now advanced—that he wished to protect her in case of his death—does not seem to me to be sustained by the circumstances of the case. His health was not in a critical condition,— no more so than was hers. They are both young people, without children, and it is quite improbable that he would have rendered himself insolvent for the mere purpose of providing for her in anticipation of his possible death, when, if she had died before him, the property would pass to her relatives instead of to him. After the transfer, he really continued in the management and control of it, and proceeded to carry out his plan, previously formed, of exchanging it for a farm. Evidently, the exchange, and all the business by which the farm and the Morgan street property was acquired for the De Russey street property, was brought about by him, and pursuant to his directions, and the apparent ownership of that property and of the farm, after they moved onto it, was, so far as its management indicated, in him. He also,